# No. 25-1446

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

―――――――――――

NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*(Caption Continued on Inside Cover)*

―――――――――――

On Appeal from the United States District Court
for the Eastern District of New York, No. 2:24-cv-4503

―――――――――――

### BRIEF FOR APPELLEES U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF THE TREASURY, U.S. DEPARTMENT OF LABOR, ROBERT F. KENNEDY, JR., SCOTT BESSENT, LORI CHAVEZ-DEREMER

―――――――――――

BRETT A. SHUMATE
  *Assistant Attorney General*

AUGUST FLENTJE
SARAH CLARK GRIFFIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8727*

———————————————

UNITED STATES DEPARTMENT OF THE TREASURY, UNITED STATES DEPARTMENT OF LABOR, ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services, SCOTT BESSENT, in his official capacity as Secretary, United States Department of the Treasury, LORI CHAVEZ-DEREMER, in her official capacity as Secretary, United States Department of Labor,

Defendants-Appellees.*

———————————————

* Robert F. Kennedy, Jr., Secretary of Health and Human Services; Scott Bessent, Secretary of Treasury; and Lori Chavez-DeRemer, Secretary of Labor, have been automatically substituted for Xavier Becerra, Janet Yellen, and Julie Su as defendants, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS

TABLE OF AUTHORITIES

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

     A.    Statutory and Regulatory Background ....................................... 2

     B.    Factual and Procedural Background ........................................... 7

SUMMARY OF ARGUMENT ..................................................................... 9

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT ........................................................................................... 12

I.     Plaintiff lacks standing ................................................................. 12

II.    Plaintiff is not entitled to an order requiring the Departments to modify the method for selecting IDR entities or setting aside the current selection method. ............................................................. 16

III.   The Departments' forthcoming regulation will moot this case. ......................... 22

CONCLUSION ........................................................................................ 24

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Apotex Inc. v. Acorda Therapeutics, Inc.,*
 823 F.3d 51 (2d Cir. 2016) ........................................................................ 11

*Benzman v. Whitman,*
 523 F.3d 119 (2d Cir. 2008) ......................................................... 8-9, 16, 17

*Crupar-Weinmann v. Paris Baguette Am., Inc.,*
 861 F.3d 76 (2d Cir. 2017) ........................................................................ 16

*Doe v. McDonald,*
 128 F.4th 379 (2d Cir. 2025) ............................................................... 22, 24

*FCC v. Fox Television Stations, Inc.,*
 556 U.S. 502 (2009) ................................................................................... 22

*FDA v. Alliance for Hippocratic Med.,*
 602 U.S. 367 (2024) ................................................................................... 13

*Lamar Advert. of Penn, LLC v. Town of Orchard Park,*
 356 F.3d 365 (2d Cir. 2004) ...................................................................... 23

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ................................................................................... 12

*Martin-Trigona v. Shiff,*
 702 F.2d 380 (2d Cir. 1983) ...................................................................... 22

*Murthy v. Missouri,*
 603 U.S. 43 (2024) ..................................................................................... 12

*Natural Res. Def. Council, Inc. v. FDA,*
 710 F.3d 71 (2d Cir. 2013) ........................................................................ 19

*Neurological Surgery Prac. of Long Island, PLLC v. HHS,*
 145 F.4th 212 (2d Cir. 2025) ............................ 7-8, 10, 13, 14, 15, 17, 22, 24

*Norton v. Southern Utah Wilderness All. (SUWA),*
 542 U.S. 55 (2004) ........................................... 9, 10, 16, 17, 18, 19

*Simon v. Eastern Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976) ................................................................. 12

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ............................................................... 13

*Telecommunications Rsch. & Action Ctr. v. FCC (TRAC)*,
750 F.2d 70 (D.C. Cir. 1984) ................................................. 19

*Van Wie v. Pataki*,
267 F.3d 109 (2d Cir. 2001) ................................................... 24

*Vaz v. Neal*,
33 F.4th 1131 (9th Cir. 2022) ................................................ 19

*Zirogiannis v. Seterus, Inc.*,
707 F. App'x 724 (2d Cir. 2017) ...................................... 15-16

**Statutes:**

Administrative Procedure Act,
5 U.S.C. §§ 701-706 ................................................................ 1
5 U.S.C. § 706(1) .............................................................. 10, 16

Consolidated Appropriations Act, 2021,
Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2757-2890 (2020) ...................... 4

No Surprises Act,
42 U.S.C. § 300gg-111 *et seq.*...................................................... 4
5 U.S.C. § 8902(p) ...................................................................... 4
42 U.S.C. § 300gg-111(a)(1)(C)(ii)-(iii) ................................... 4
42 U.S.C. § 300gg-111(a)(3)(H)(ii) ........................................... 4
42 U.S.C. § 300gg-111(b)(1)(A)-(B) ......................................... 4
42 U.S.C. § 300gg-111(c)(1)(A) ................................................ 5
42 U.S.C. § 300gg-111(c)(1)(B) ................................................ 5
42 U.S.C. § 300gg-111(c)(2)(A) ................................................ 5
42 U.S.C. § 300gg-111(c)(4) ...................................................... 5
42 U.S.C. § 300gg-111(c)(4)(F) ....................... 6, 9, 10, 18, 20
42 U.S.C. § 300gg-112(a)(1)-(2) ............................................... 4
42 U.S.C. § 300gg-131 ............................................................... 4
42 U.S.C. § 300gg-132 ............................................................... 4
42 U.S.C. § 300gg-135.............................................................. 4

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1


**Regulation:**

45 C.F.R. § 149.510 ........................................................................... 6

**Legislative Material:**

H.R. Rep. No. 116-615, pt. 1 (2020) ............................................3, 4, 5

**Other Authorities:**

Exec. Order No. 12,866,
    58 Fed. Reg. 51,735, 51,742 (Oct. 4, 1993) ................................. 23

*Federal Independent Dispute Resolution (IDR) Process Administrative Fee and*
    *Certified IDR Entity Fee Ranges,*
    88 Fed. Reg. 88,494 (Dec. 21, 2023)............................................ 6

*Federal Independent Dispute Resolution Operations,*
    88 Fed. Reg. 75,744 (Nov. 3, 2023)....................................7, 22, 23

*Requirements Related to Surprise Billing; Part I,*
    86 Fed. Reg. 36,872 (July 13, 2021) ...................................2, 3, 4

*Requirements Related to Surprise Billing; Part II,*
    86 Fed. Reg. 55,980 (Oct. 7, 2021) ............................................ 6

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. JA-46. The district court granted the government's motion to dismiss on May 23, 2025, JA-109, and entered judgment on May 28, 2025, JA-125. Plaintiff filed a timely notice of appeal on June 6, 2025. JA-126. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The No Surprises Act (Act), passed by Congress in 2020, takes patients out of the middle of certain medical billing disputes and establishes an independent dispute resolution (IDR) process to adjudicate such disputes between medical providers and insurers. Congress charged the Department of Health and Human Services (HHS), the Department of the Treasury, and the Department of Labor (collectively, the Departments) with implementing the Act. The Departments have therefore established, *inter alia*, a method by which a decisionmaker (referred to here as an IDR entity) is selected to adjudicate a given payment dispute. Plaintiff Neurological Surgery Practice of Long Island, PLLC, participates in the IDR process and is dissatisfied with the current selection method. Plaintiff filed suit against the Departments, purporting to bring claims under the APA and the All Writs Act and seeking an order requiring the Departments to modify the selection method. The district court dismissed plaintiff's suit for failure to state a claim.

The issues presented are:

1. Whether plaintiff has standing.

2. Whether plaintiff has stated a claim.

3. Whether the Departments' forthcoming regulation will moot this case.

## STATEMENT OF THE CASE

### A.     Statutory and Regulatory Background

**1.** Identical medical services are not provided under uniform pricing models, and the amount different providers may charge patients for the same service may vary substantially. In particular, the amount a provider will charge for care to a given patient often depends on whether the patient has health insurance and, if so, whether the provider has entered into a contract with the patient's health plan agreeing to provide services to the plan's members at particular pre-negotiated rates.

The pre-negotiation of rates between plans and providers is a common feature of the health care market, and most health plans have a network of providers who have contractually agreed to accept pre-negotiated payment amounts for specific items or services. *See Requirements Related to Surprise Billing; Part I*, 86 Fed. Reg. 36,872, 36,874 (July 13, 2021). Plans encourage their members to receive care from these "in-network" providers, and when they do so, the patients' financial obligations are limited by the terms of their health plans. When, however, a patient receives care from an out-of-network provider, the provider generally will not have agreed to accept a particular negotiated rate for the item or service, and the patient's health plan may decline to pay the provider or may pay an amount lower than the provider's billed charges. *See id.* In

2

that circumstance, the patient is typically responsible for the balance of the bill, and because the rate charged was not pre-negotiated by the patient's health plan, the balance bill may result in the patient being held personally responsible for immensely more than the same item or service would have cost had the rate been pre-negotiated.

"A balance bill may come as a surprise for the individual." 86 Fed. Reg. at 36,874. Surprise billing may occur when a patient receives care from a provider whom the patient could not have chosen in advance, or whom the patient did not have reason to believe would be outside the network of the patient's plan. For example, a patient in an emergency situation will often be unable to choose which emergency department she goes to (or is taken to) or whether to receive care from an in-network provider even if the emergency department happens to be in-network. *Id.* Likewise, even patients who try to receive non-emergency services at an in-network facility (like a hospital) will sometimes nonetheless receive care from an out-of-network provider (such as a radiologist or anesthesiologist) furnishing services at the in-network facility. *See id.*

Under these circumstances, before the Act, a patient with health insurance risked receiving a surprise medical bill. *See* 86 Fed. Reg. at 36,874. Indeed, "[t]he financial liability imposed on patients by surprise medical bills can be staggering." H.R. Rep. No. 116-615, pt. 1, at 52 (2020). As Congress recognized, "[t]hese unexpected medical bills can result in financial ruin, as nearly four in ten American adults are unable to cover a $400 emergency expense, yet the average surprise balance bill by emergency physicians in 2014 and 2015 was an estimated $620 greater than the Medicare rate for the same

3

service." *Id.* (footnote omitted). The potentially devastating effects on patients are well documented. *See, e.g., id.* (referring to a "shocking" example of "a spinal surgery patient who received a bill of $101,000" after her surgeon mistakenly informed her that he was in-network).

**2.** In 2020, Congress enacted the No Surprises Act to combat the growing crisis of surprise medical bills. Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. BB, tit. I, 134 Stat. 1182, 2757-2890 (2020) (codified in relevant part at 42 U.S.C. § 300gg-111 *et seq.*).[1] The Act protects insured patients from unexpected liabilities arising from common forms of surprise billing. When applicable, the Act caps a patient's share of liability to an out-of-network provider at an amount comparable to what the patient would have owed had she received care from an in-network provider. *See* 42 U.S.C. §§ 300gg-111(a)(1)(C)(ii)-(iii), (3)(H)(ii), (b)(1)(A)-(B), 300gg-112(a)(1)-(2).[2] The Act also creates procedures that allow the provider to seek further

---

[1] For ease of reference, this brief cites the Act's amendments to the Public Health Service Act and the regulations implemented by HHS. The Act made parallel amendments to the Employee Retirement Income Security Act (administered by the Department of Labor) and the Internal Revenue Code (administered by the Department of the Treasury), and the implementing regulations likewise contain parallel provisions implemented by the different Departments. The Act also affects the Office of Personnel Management (OPM) by requiring that OPM's contracts with the Federal Employees Health Benefits Program require the carrier to comply with applicable provisions of the Act. *See* 5 U.S.C. § 8902(p).

[2] The circumstances where these protections apply include: (1) when an insured patient receives emergency services from an out-of-network provider or emergency facility, *see* 42 U.S.C. § 300gg-131; (2) when an insured patient receives certain non-emergency services related to a visit at certain types of in-network facilities but is

*Continued on next page.*

compensation from the patient's health plan. Those separate procedures further Congress's goal of "taking the consumer out of the middle" of billing disputes. *See* H.R. Rep. No. 116-615, pt. 1, at 55 (quotation marks omitted).

To that end, the Act provides for an independent dispute resolution (IDR) process for resolving disputes between insurers and out-of-network providers over how much the insurer will pay for the care. If the provider is not satisfied with the insurer's initial payment on a given bill or receives a notice of denial of payment, either party may initiate a 30-day period of open negotiation. 42 U.S.C. § 300gg-111(c)(1)(A). If negotiations are unsuccessful, either party may then initiate the IDR process. *Id.* § 300gg-111(c)(1)(B). IDR proceedings are adjudicated by private entities (referred to in this brief as IDR entities) certified for that purpose by the Departments. *Id.* § 300gg-111(c)(4).

**3.** Although the Act details the basic framework for how IDR proceedings should operate, Congress delegated to the Departments the task of devising the implementing regulations necessary to make the program functional. *See* 42 U.S.C. § 300gg-111(c)(2)(A). The Act states, for example, that the Departments shall "provide for a method . . . that allows for" the parties to a dispute "to jointly select, not later than the last day of the 3-business day period following the date of the initiation of the

---

nevertheless treated by an out-of-network provider such as an anesthesiologist or radiologist, *see id.* § 300gg-132; and (3) when an insured patient is transported by an out-of-network air ambulance provider, *see id.* § 300gg-135.

process," a suitable IDR entity. *Id.* § 300gg-111(c)(4)(F)(i). The method must also require the Secretary to select a suitable IDR entity within three more business days, "in the case such parties do not make such selection by such last day." *Id.* § 300gg-111(c)(4)(F)(ii).

The Departments have issued multiple regulations implementing the Act, including the IDR process. *See Requirements Related to Surprise Billing; Part II*, 86 Fed. Reg. 55,980 (Oct. 7, 2021); *Federal Independent Dispute Resolution (IDR) Process Administrative Fee and Certified IDR Entity Fee Ranges*, 88 Fed. Reg. 88,494, 88,499, 88,510 (Dec. 21, 2023).

The regulations establish a method for selecting an IDR entity in a given dispute. When a party initiates the IDR process, it must identify a preferred IDR entity. 45 C.F.R. § 149.510(b)(2)(iii)(A)(5). Initiating the IDR process starts a three-business-day clock (referred to here as the Selection Period). If the other side does not object to the proposed IDR entity by the end of the Selection Period, that IDR entity is selected. *Id.* § 149.510(c)(1)(i). If the other side objects and proposes an alternative IDR entity, and then the initiating party does not object to that alternative by the end of the Selection Period, then the alternative IDR entity is selected. *Id.* In other words, the initiating party must object to any proposed alternative IDR entity within three business days of initiating the IDR process. If the initiating party does object to the proposed alternative within the Selection Period, then the Secretary will randomly select another eligible IDR entity at that time. *Id.* § 149.510(c)(1)(iv).

The Departments have proposed a regulation that would, *inter alia*, modify this IDR entity selection process. *Federal Independent Dispute Resolution Operations*, 88 Fed. Reg. 75,744, 75,775-76 (Nov. 3, 2023) (proposed rule); Off. of Info. & Regul. Affs. (OIRA), Exec. Off. of the President, *Independent Dispute Resolution Operations (CMS-9897)*, https://www.reginfo.gov/public/do/eoDetails?rrid=1259515 (last visited Feb. 17, 2026) (noting that the rule was received by OIRA on January 29, 2026). Under the proposed rule, if the non-initiating party proposes an alternative IDR entity on the final day of the three-business-day window and the initiating party does not consent by the end of the day, the proposed alternative will not be deemed selected at that time. 88 Fed. Reg. at 75,775-76. Instead, the initiating party would have two additional business days to either consent or object to the proposed alternative. *Id.* at 75,776. If the initiating party objects in that period, the Secretary would then randomly select another eligible IDR entity. *Id.*

## B. Factual and Procedural Background

**1.** Plaintiff Neurological Surgery Practice of Long Island, PLLC, is a private neurosurgery practice in New York. JA-46. Plaintiff is out-of-network for most of its patients and has participated in the IDR process on various occasions. JA-47, 50-53.

Plaintiff has filed multiple lawsuits arising from the Act, including a suit in April 2023 challenging certain aspects of the Departments' implementation of the Act that plaintiff believes led to "a backlog of disputes awaiting resolution" and "unpaid or delayed reimbursement from healthcare plans." *Neurological Surgery Prac. of Long Island,*

*PLLC v. HHS*, 145 F.4th 212, 218 (2d Cir. 2025). The Court affirmed dismissal of that suit, holding that plaintiff lacked standing as to one of its claims and sought relief foreclosed by the APA as to others. *Id.* at 218-19.

Plaintiff filed the present suit against the Departments in June 2024. *See* JA-3; JA-40 (amended complaint). The complaint brought claims under the APA and All Writs Act and argued that the Departments have violated their obligations under the No Surprises Act and the APA "by refusing to step in immediately and protect the ability of [plaintiff] and other similarly situated providers to object to the payers' proposed alternative IDR entities." JA-55; *see also* JA-54-58. The complaint sought declaratory relief, JA-58, as well as an order or a writ of mandamus that "direct[ed] that the Departments immediately take all steps necessary to honor their statutory obligations and rectify this violation of law and denial of IDR selection rights," including requiring non-initiating parties to propose an alternative IDR entity at least 36 hours before the end of the Selection Period and reassigning pending IDR proceedings to new IDR entities where plaintiff had less than 36 hours to object and the proposed alternative was deemed selected because plaintiff did not object before the end of the Selection Period, JA-59.

**2.** The district court dismissed plaintiff's suit for failure to state a claim. The court noted that "[t]he APA 'empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act.'" JA-120-21 (quoting *Benzman v. Whitman*, 523 F.3d 119, 130 (2d Cir.

2008)). "This 'limitation precludes . . . broad programmatic attack[s],' and 'rules out judicial direction of even discrete agency action that is not demanded by law.'" JA-121 (alterations in original) (quoting *Norton v. Southern Utah Wilderness All. (SUWA)*, 542 U.S. 55, 64-65 (2004)). Here, the court explained, the Act compelled the Departments to "provide for a method" for parties to jointly select an IDR entity and the Departments had done so. JA-123 (quoting 42 U.S.C. § 300gg-111(c)(4)(F)) (quotation marks omitted). Plaintiff identified no statutory mandate calling for a different method, much less one that incorporated plaintiff's proposed 36-hour period for accepting or rejecting an alternative IDR entity. JA-123. As a result, the court concluded, plaintiff's claims could not proceed. JA-122-24. Plaintiff appealed.

## SUMMARY OF ARGUMENT

**I.** Plaintiff lacks standing, because it has not alleged an immediate threat of a concrete injury fairly traceable to the regulatory provision that plaintiff challenges. Plaintiff alleges that insurers tend to propose a particular IDR entity—Maximus—that plaintiff states "statistically and historically" issues decisions slowly and tends to favor insurers. But plaintiff has not established that there is an immediate threat that it will fail to object to Maximus (despite plaintiff's stated dissatisfaction with Maximus and its awareness that insurers may propose Maximus late in the Selection Period) and that Maximus will then issue a decision more slowly or less favorable than any of the other IDR entities would have. Moreover, even assuming plaintiff is injured by the proposal of Maximus as IDR entity on the third day, that injury would not be caused by the

Departments—it would be caused by some combination of the insurer employing the offending tactic, Maximus itself, and plaintiff's own failure to object in time, despite its awareness of the tactic.

**II.** Plaintiff is not entitled to an order requiring the Departments to modify the method for selecting IDR entities or setting aside any part of the regulation. A claim to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. SUWA*, 542 U.S. 55, 64 (2004); *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212 (2d Cir. 2025).

Plaintiff dislikes a particular aspect of the current IDR entity selection method—the fact that the non-initiating party can wait until the end of the Selection Period to propose an alternative IDR entity and have that alternative be selected if the initiating party is not able to object in time. Plaintiff would prefer that the entity not be deemed selected in that scenario. But plaintiff is not entitled to an order directing the Departments to modify the selection method, whether in the precise way plaintiff suggests or in some other way. As the district court explained, the Act required "Defendants to 'provide for a method' where the providers and Payers 'jointly select' an IDR entity within the Selection Period." JA-123 (quoting 42 U.S.C. § 300gg-111(c)(4)(F)). The Departments "have provided such a method," as the district court rightly recognized. JA-123.

Nor is the regulation contrary to the Act. The Departments have chosen to treat a party's lack of objection as consent to the proposed IDR entity, whether the entity is proposed by the initiating party at the outset of the Selection Period or by the non-initiating party some time before that period expired. This opt-out system is not foreclosed by any part of the statute and is a reasonable exercise of the Departments' discretion. The Departments have therefore not "depart[ed] from the criteria specified by the Act," Br. 30, or "introduc[ed] a third method of selection," Br. 38. They have simply provided that, where one party proposes an IDR entity and the other party does not object to that proposal, the parties shall be deemed to have "jointly select[ed]" that IDR entity.

**III.** The Departments have proposed a regulation that removes the feature of the IDR entity selection method at issue in this case. When the proposed regulation is finalized—likely in the under 90 days—plaintiff's challenge will be moot. Plaintiff cannot benefit from an order shielding it from a defunct selection method, nor can a court provide effectual relief from a regulatory provision that has been rescinded.

## STANDARD OF REVIEW

The district court's grant of a motion to dismiss is reviewed de novo. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

# ARGUMENT

## I. Plaintiff lacks standing.

**1.** Plaintiff has not met the standing requirements. To establish standing, a plaintiff must have "an injury that is concrete, particularized, and actual or imminent." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quotation marks omitted). Where a plaintiff seeks only "forward-looking relief," it must face "a real and immediate threat of repeated injury." *Id.* at 58 (quotation marks omitted). Moreover, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations in original) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks omitted).

Plaintiff's complaint alleges that it is injured when insurers pick a particular IDR entity—Maximus—at the last minute, because plaintiff is unable to object in time and because, according to plaintiff, Maximus is more favorable to insurers than other IDR entities are and tends to render decisions more slowly than other IDR entities. JA-50-53.

As a preliminary matter, plaintiff does not allege an immediate threat of a concrete future injury. According to plaintiff, Maximus "statistically and historically" favors insurers, JA-51, but plaintiff cannot rely on statistical probabilities to establish

standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Specifically, plaintiff has not alleged that there is immediate threat (1) that an insurer will wait until the third day to propose an alternative IDR entity, (2) that the insurer will select Maximus as that alternative, (3) that plaintiff will not object despite its repeated experience with the selection tactic at issue and its stated dissatisfaction with Maximus as a decisionmaker, and (4) that Maximus will then render a decision more slowly than or more unfavorable to plaintiff than any of the IDR entities not proposed by either party would have (that is, any of the IDR entities from which the Secretary would have randomly selected if plaintiff had objected to Maximus in time).

More fundamentally, even assuming plaintiff is injured by the selection of Maximus as IDR entity, that injury would not be caused by the Departments—it would be caused by some combination of the insurer employing the offending tactic, Maximus itself, and plaintiff's own failure to object, despite its awareness of the tactic. *See, e.g.*, *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (observing that standing is "'substantially more difficult to establish'" where "a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of *someone else*'" (quoting *Defenders of Wildlife*, 504 U.S. at 562)); *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 145 F.4th 212, 225 (2d Cir. 2025).

**2. a.** According to the district court, plaintiff's injury is the time-value of money it has lost due to Maximus taking "longer than average to come to a [payment] determination." JA-116 (quoting JA-51). Plaintiff itself has never mentioned lost time-

13

value of money in district court or on appeal, nor does it allege that it is likely to suffer such a loss in the future. And the risk that plaintiff will be deprived the time-value of money is not sufficiently concrete or imminent to support standing here. Indeed, plaintiff has even not attempted to allege the chain of events necessary to support a time-value of money injury: that insurers will propose Maximus on the third day; that plaintiff will not object in time despite its knowledge of the tactic in question and dislike of Maximus; that Maximus will rule in favor of plaintiff (despite Maximus's alleged history of favoring insurers) but will do so more slowly than any of the IDR entities not proposed by either party would have; and that plaintiff will receive the payment in question from the insurer later than it would have if another IDR entity had been selected.

Relatedly, any lost time-value of money from delayed payments is not fairly traceable to the challenged regulation and is not likely to be redressed by a favorable judicial decision, because plaintiff has not shown that changing the method for selecting IDR entities is likely to address any concerns it has about delayed payments. In fact, plaintiff's other lawsuit, now dismissed, argued that IDR entities and insurers routinely miss the statutory deadlines for ruling on disputes and for making payments. *See Neurological Surgery Prac.*, 145 F.4th at 220-21; *id.* at 226 ("Neurological Surgery's amended complaint alleges primarily that its compensation payments were delayed due to the failure of healthcare plans and IDR entities to faithfully comply with the provisions of the Act."); Brief and Special Appendix for Plaintiff-Appellant at 28,

*Neurological Surgery Prac.*, 145 F.4th 212 (No. 24-1884) (complaining about "the rampant failure of IDR entities to issue timely determinations [and] the refusal of health plans to comply with payment directives when providers prevail in IDR"). In plaintiff's telling, therefore, even if the Departments change the selection method, plaintiff will still be at the mercy of IDR entities and insurers that flout statutory deadlines.

Of course, an IDR entity's failure to meet the statutory deadline for ruling on a dispute, or an insurer's failure to meet the statutory deadline for paying a provider, is not traceable to the Departments at all—much less the method the Departments have set forth for how the parties select a specific IDR entity for a specific dispute. As in plaintiff's other lawsuit, plaintiff has "fail[ed] to allege sufficient facts indicating that the delayed payments are 'fairly traceable' to the Departments' actions or inactions." *See Neurological Surgery Prac.*, 145 F.4th at 226. And plaintiff does not explain how requiring the Departments to modify the selection method is likely to redress any injury it might have from delayed payments.

**b.** Plaintiff argues that it is injured by the current selection method because it "undermines the neutral selection process the [Act] provides for the benefit of providers like the Practice." Br. 45; *see* Br. 47 (arguing that the regulation violates plaintiff's right to "an impartial IDR process"). But plaintiff must tether the goal of a neutral selection process to some injury it is likely to suffer. As plaintiff recognizes, that injury "must be both 'particularized'—i.e., 'it must affect the plaintiff in a personal and individual way'—and 'concrete'—i.e., 'it must actually exist.'" Br. 45 (quoting *Zirogiannis*

15

*v. Seterus, Inc.*, 707 F. App'x 724, 726 (2d Cir. 2017)). The general desire for a neutral, impartial system is not concrete or particularized. Moreover, to the extent plaintiff alleges the violation of a procedural right, *but see* Br. 47 (asserting that the Departments' failure to implement a neutral system "is not a 'bare procedural violation,' but violates the Practice's *substantive* right"), it has not shown a risk of real harm, for the reasons discussed above. *Supra* pp. 12-15; *see Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 80 (2d Cir. 2017) ("[T]he critical question for standing purposes is 'whether the particular procedural violations alleged in this case entail *a degree of risk* sufficient to meet the concreteness requirement.'").

## II. Plaintiff is not entitled to an order requiring the Departments to modify the method for selecting IDR entities or setting aside the current selection method.

**1.** Plaintiff takes issue with the method that the Departments have established for selecting IDR entities. But the district court rightly held that plaintiff is not entitled to relief requiring the Departments to change that method, much less to implement the particular features requested by plaintiff.

A claim to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. 55, 64 (2004); *accord Benzman v. Whitman*, 523 F.3d 119, 130 (2d Cir. 2008). That is because "the only agency action that can be compelled under the APA is action legally *required*." *SUWA*, 542 U.S. at 63. As the district court explained, "[t]he APA 'empowers a court only to compel an agency to

perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act.'" JA-120-21 (quoting *Benzman*, 523 F.3d at 130). "This 'limitation precludes . . . broad programmatic attack[s],' and 'rules out judicial direction of even discrete agency action that is not demanded by law." JA-121 (alterations in original) (quoting *SUWA*, 542 U.S. at 64-65). Indeed, this Court recently reiterated as much in a case brought by plaintiff challenging other aspects of the Departments' implementation of the Act. *Neurological Surgery Prac.*, 145 F.4th at 219 (affirming dismissal of plaintiff's suit).

The district court rightly held that the relief plaintiff seeks is not available. Plaintiff dislikes a particular aspect of the current IDR entity selection method—the fact that the non-initiating party can wait until the end of the Selection Period to propose an alternative IDR entity and have that alternative be selected if the initiating party fails to object in time. Plaintiff would prefer that the entity not be deemed selected in that scenario. To that end, plaintiff seeks a court order "directing that the Departments immediately take all steps necessary to honor their statutory obligations" by "at least" (1) requiring non-initiating parties to propose any alternative IDR entity at least 36 hours before the end of the three-business-day period and (2) randomly assigning new IDR entities in any pending IDR proceedings where plaintiff had fewer than 36 hours to object to the alternative IDR entity and did not object before the end of the three-business-day period. JA-59.

17

But plaintiff is not entitled to an order directing the Departments to modify the selection method, whether in the precise way plaintiff suggests or in some other way. An order commanding the Departments to "take all steps necessary to honor their statutory obligations," JA-59, does not call for a discrete action and "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action," JA-123 (alternations in original) (quoting *SUWA*, 542 U.S. at 66). And the Act nowhere requires the Departments to incorporate an intermediate 36-hour deadline into the selection process. JA-123 ("Plaintiff does not identify any specific statutory provision that mandates a 36-hour period for initiating parties to decide whether to accept or reject a proposed alternative IDR entity . . . .").

As the district court explained, the Act required "Defendants to 'provide for a method' where the providers and Payers 'jointly select' an IDR entity within the Selection Period." JA-123 (quoting 42 U.S.C. § 300gg-111(c)(4)(F)). The Departments "have provided such a method," as the court recognized. JA-123. The court "sympathize[d] with Plaintiff's complaints [about] the current method." JA-123. (And the Departments have been mindful of them as well, as evidenced by the proposed rule addressing the issue. *Supra* p. 7.) But the court recognized that "it is not the province of this Court to order a reworking of a legislative and executive program." JA-123 (quoting *Neurological Surgery Prac. of Long Island, PLLC v. HHS*, 682 F. Supp. 3d 249, 254 (E.D.N.Y. 2023)). To hold otherwise would be to risk "judicial entanglement in abstract

18

policy disagreements which courts lack both expertise and information to resolve." JA-122 n.8 (quoting *SUWA*, 542 U.S. at 66).

**2. a.** According to plaintiff, the Act "imposes a specific, mandatory duty on the Departments: 'to provide for a method' of IDR entity selection *that implements the specific criteria* set forth in the Act." Br. 40. The Departments have provided for a selection method and therefore satisfied the specific mandatory duty at issue. JA-123. But the Act has left the precise details of that method to the Departments, which have exercised their discretion as to how to implement the Act's criteria. Indeed, the fact that plaintiff has suggested one way to modify the selection process (36-hours' notice within the Selection Period) and the Departments have proposed another (extra time to object if an alternative IDR entity is proposed on the third day) underscores the discretionary nature of the Departments' task.

Plaintiff's reference to the "*TRAC*" factors does not advance its case. *See* Br. 41-43 (citing *Telecommunications Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984)). Those factors go to whether an agency has unreasonably delayed in taking mandatory action. *See Natural Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013); *see also Vaz v. Neal*, 33 F.4th 1131, 1136 (9th Cir. 2022) (unreasonable delay claim must be based on "clear, certain, and mandatory duty" (quotation marks omitted)); *TRAC*, 750 F.2d at 79. Plaintiff suggests the Departments have unreasonably delayed finalizing their proposed rule. *See* Br. 42. But the Departments do not have a clear and mandatory duty to issue such a new rule, so the *TRAC* factors are not relevant here. In

any event, the Departments have taken a reasonable amount of time in considering the economic regulation at issue here.

**b.** Plaintiff also asks the Court to hold that the current regulation is contrary to the Act and to "set[] aside the unlawful provisions of the rule." Br. 27. As a preliminary matter, plaintiff's amended complaint never asked the district court to set aside any part of the regulation. Instead, it asked the court to order the Departments to "take all steps necessary to honor their statutory obligations." JA-56, 59. In any event, the regulation is consistent with the Act.

The Act states that the Secretary "shall . . . provide for a method—(i) that allows for the [parties] to jointly select, not later than the last day of the 3-business day period following the date of the initiation of the process," a certified IDR entity and (ii) "requires, in the case such parties do not make such selection by such last day, the Secretary to, not later than 6 business days after such date of initiation[,] . . . select such an entity." 42 U.S.C. § 300gg-111(c)(4)(F); *see* Br. 31-32. The statute on its face permits—indeed, requires—the Departments to exercise their discretion as to how to implement those terms, including the abbreviated Selection Period.

In exercising that discretion, the Departments chose to treat a party's lack of objection as consent to the proposed IDR entity, whether the entity is proposed by the initiating party at the outset of the Selection Period or by the non-initiating party some time before that period expires. This opt-out system is not foreclosed by any part of the statute and is a reasonable exercise of the Departments' discretion, particularly given

that the tight three-business-day timeline imposed by Congress necessarily means that the parties will have a limited window in which to select an IDR entity. The Departments have not "depart[ed] from the criteria specified by the Act," Br. 30, or "introduc[ed] a third method of selection," Br. 38. They have simply provided that, where one party proposes an IDR entity and the other party does not object to that proposal, the parties shall be deemed to have "jointly select[ed]" that IDR entity.

Contrary to plaintiff's assertion, the district court did not fail to address plaintiff's argument that the regulation is inconsistent with the Act or "erroneously assume[] that the Departments had authority to issue" the regulation. *See* Br. 29. The court noted that, "according to Plaintiff, the rule . . . improperly treats the non-initiating party's unilateral selection as a joint choice." JA-121-22 (citation omitted). And the court went on to reject that argument, holding that the Departments had indeed provided a method "where the providers and Payers 'jointly select' an IDR entity within the Selection Period." JA-123. To the extent the court focused its discussion on whether the Departments could be compelled to modify the regulation rather than on whether the court should set the regulation aside, that was because, as noted above, plaintiff's amended complaint did not ask for the latter remedy. *Supra* p. 20; *see* JA-56, 59. There was therefore no omission in the court's analysis.

Finally, the Departments have never "acknowledged" any inconsistency with the Act. Br. 22; *see also* Br. 34, 41. The fact that the Departments have proposed a new rule is no concession, as agencies are free to adopt new policies that fall within the scope of

their authority. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). And to hold otherwise would disincentivize agencies from addressing concerns raised by regulated entities. Nor does the language of the proposed rule assist plaintiff. The Departments explained that they "are of the view that in order for a certified IDR entity to be 'jointly' selected, the parties must agree on, or be given the opportunity to object to that certified IDR entity." 88 Fed. Reg. at 75,774. The current rule does, on its face, give the parties an opportunity to object to a proposed IDR entity. But the Departments had come to realize that, when a party proposed an alternative on the third day, that alternative could be "'jointly' selected by default." *Id.* The Departments therefore proposed to deviate from the opt-out system in that situation. But identifying "potential areas [of] improve[ment]," *id.*, is in no way an acknowledgment that the current rule is inconsistent with the statute.

## III. The Departments' forthcoming regulation will moot this case.

The Departments have proposed a regulation that, when finalized, will moot plaintiff's challenge to the current IDR entity selection method.

"To sustain jurisdiction, a dispute must not only be alive when filed, but throughout its pendency." *Doe v. McDonald*, 128 F.4th 379, 385 (2d Cir. 2025). A case is therefore moot when "the relief sought can no longer be given or is no longer needed," *Neurological Surgery Prac.*, 145 F.4th at 223 (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)), as when a challenged statutory or regulatory provision is

significantly amended or repealed, *see, e.g.*, *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004) (Sotomayor, J.).

Plaintiff takes issue with a feature of the IDR entity selection method. *See* Br. 15. The forthcoming regulation addresses plaintiff's concern by removing that challenged feature. *See, e.g.*, Br. 14-16, 22, 42 (noting that the Departments have proposed a "[c]orrective [r]ule"). Under the proposed rule, if the non-initiating party proposes an alternative IDR entity on the last day of the three-business-day window and the initiating party does not agree that day, the proposed alternative IDR entity will not be deemed automatically selected. 88 Fed. Reg. at 75,775-76. Instead, the Secretary will give the initiating party two more business days to agree or object to the proposed alternative IDR entity. *Id.* at 75,776. If the initiating party objects in that time, the Secretary will then randomly select an eligible IDR entity from those not proposed by either party. *Id.*

The new regulation is currently pending regulatory review at OIRA and is therefore likely to be finalized by the end of April 2026. *See* OIRA, Exec. Off. of the President, *Independent Dispute Resolution Operations (CMS-9897)*, *supra* (noting that the rule was received on January 29, 2026); *see also* Exec. Order No. 12,866, 58 Fed. Reg. 51,735, 51,742 (Oct. 4, 1993) (directing OIRA to waive or complete its review within 90 calendar days). When the final rule is issued, plaintiff's challenge will be moot. Plaintiff cannot benefit from an order shielding it from a defunct selection method and a court cannot provide "any effectual relief" from a regulatory provision that has already been

rescinded. *See Doe*, 128 F.4th at 385 (quotation marks omitted). Nor would any exception to mootness apply, in large part because there would be no reasonable expectation that the alleged violation would recur. *See Neurological Surgery Prac.*, 145 F.4th at 224 (voluntary cessation); *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) (capable of repetition, yet evading review). The Departments have engaged in deliberate and considered rule-making, spanning multiple administrations, the result of which will address the concern raised by plaintiff in this case. Nothing supports the conclusion that the Departments would be interested in, or would attempt to, reinstitute the old IDR entity selection method once this litigation has ended.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

AUGUST FLENTJE

*/s/ Sarah Clark Griffin*
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*
*sarah.c.griffin@usdoj.gov*

FEBRUARY 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,076 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

_/s/ Sarah Clark Griffin_
SARAH CLARK GRIFFIN

**ADDENDUM**

## TABLE OF CONTENTS

42 U.S.C. § 300gg-111(c)(4)..................................................................... A1

45 C.F.R. § 149.510(c)............................................................................. A3

**42 U.S.C. § 300gg-111(c)(4)**

**§ 300gg-111. Preventing surprise medical bills**

\*   \*   \*

**(c) Determination of out-of-network rates to be paid by health plans; independent dispute resolution process**

\*   \*   \*

(4) Certification and selection of IDR entities

(A) In general

The Secretary, in consultation with the Secretary of Labor and Secretary of the Treasury, shall establish a process to certify (including to recertify) entities under this paragraph. Such process shall ensure that an entity so certified-

(i) has (directly or through contracts or other arrangements) sufficient medical, legal, and other expertise and sufficient staffing to make determinations described in paragraph (5) on a timely basis;

(ii) is not-

(I) a group health plan or health insurance issuer offering group or individual health insurance coverage, provider, or facility;

(II) an affiliate or a subsidiary of such a group health plan or health insurance issuer, provider, or facility; or

(III) an affiliate or subsidiary of a professional or trade association of such group health plans or health insurance issuers or of providers or facilities;

(iii) carries out the responsibilities of such an entity in accordance with this subsection;

(iv) meets appropriate indicators of fiscal integrity;

(v) maintains the confidentiality (in accordance with regulations promulgated by the Secretary) of individually identifiable health information obtained in the course of conducting such determinations;

A1

(vi) does not under the IDR process carry out any determination with respect to which the entity would not pursuant to subclause (I), (II), or (III) of subparagraph (F)(i) be eligible for selection; and

(vii) meets such other requirements as determined appropriate by the Secretary.

(B) Period of certification

Subject to subparagraph (C), each certification (including a recertification) of an entity under the process described in subparagraph (A) shall be for a 5-year period.

(C) Revocation

A certification of an entity under this paragraph may be revoked under the process described in subparagraph (A) if the entity has a pattern or practice of noncompliance with any of the requirements described in such subparagraph.

(D) Petition for denial or withdrawal

The process described in subparagraph (A) shall ensure that an individual, provider, facility, or group health plan or health insurance issuer offering group or individual health insurance coverage may petition for a denial of a certification or a revocation of a certification with respect to an entity under this paragraph for failure of meeting a requirement of this subsection.

(E) Sufficient number of entities

The process described in subparagraph (A) shall ensure that a sufficient number of entities are certified under this paragraph to ensure the timely and efficient provision of determinations described in paragraph (5).

(F) Selection of certified IDR entity

The Secretary shall, with respect to the determination of the amount of payment under this subsection of an item or service, provide for a method-

(i) that allows for the group health plan or health insurance issuer offering group or individual health insurance coverage and the nonparticipating provider or the nonparticipating emergency facility (as applicable) involved in a notification under paragraph (1)(B) to jointly select, not later than the last day of the 3-business day period following the date of the initiation of the process with respect to such item or service, for purposes of making such determination, an entity certified under this paragraph that-

A2

(I) is not a party to such determination or an employee or agent of such a party;

(II) does not have a material familial, financial, or professional relationship with such a party; and

(III) does not otherwise have a conflict of interest with such a party (as determined by the Secretary); and

(ii) that requires, in the case such parties do not make such selection by such last day, the Secretary to, not later than 6 business days after such date of initiation-

(I) select such an entity that satisfies subclauses (I) through (III) of clause (i)); 2 and

(II) provide notification of such selection to the provider or facility (as applicable) and the plan or issuer (as applicable) party to such determination.

An entity selected pursuant to the previous sentence to make a determination described in such sentence shall be referred to in this subsection as the "certified IDR entity" with respect to such determination.

\*   \*   \*

## 45 C.F.R. § 149.510(c)

## § 149.510. Independent dispute resolution process

\*   \*   \*

### (c) *Federal IDR process following initiation*

(1) *Selection of certified IDR entity —*

(i) *In general.* The plan or issuer or the provider, facility, or provider of air ambulance services receiving the notice of IDR initiation under paragraph (b)(2) of this section may agree or object to the preferred certified IDR entity identified in the notice of IDR initiation. If the party in receipt of the notice of IDR initiation fails to object within 3 business days, the preferred certified IDR entity identified in the notice of IDR initiation will be selected and will be treated as jointly agreed to by the parties, provided that the certified IDR entity does not have a conflict of interest. If the party in receipt of the notice of IDR initiation objects, that party must notify the initiating party of the objection and propose

A3

an alternative certified IDR entity. The initiating party must then agree or object to the alternative certified IDR entity; if the initiating party fails to agree or object to the alternative certified IDR entity, the alternative certified IDR entity will be selected and will be treated as jointly agreed to by the parties. In order to select a preferred certified IDR entity, the plan or issuer and the provider, facility, or provider of air ambulance services must jointly agree on a certified IDR entity not later than 3 business days after the initiation date of the Federal IDR process. If the plan or issuer and the provider, facility, or provider of air ambulance services fail to agree upon a certified IDR entity within that time, the Secretary shall select a certified IDR entity in accordance with paragraph (c)(1)(iv) of this section.

(ii) **Requirements for selected certified IDR entity.** The certified IDR entity selected must be an IDR entity certified under paragraph (e) of this section, that:

(A) Does not have a conflict of interest as defined in paragraph (a)(2) of this section;

(B) Ensures that assignment of personnel to a payment determination and decisions regarding hiring, compensation, termination, promotion, or other similar matters related to personnel assigned to the dispute are not made based upon the likelihood that the assigned personnel will support a particular party to the determination being disputed other than as outlined under paragraph (c)(4)(iii) of this section; and

(C) Ensures that any personnel assigned to a payment determination do not have any conflicts of interests as defined in paragraph (a)(2) of this section regarding any party to the dispute within the 1 year immediately preceding an assignment of dispute determination, similar to the requirements laid out in 18 U.S.C. 207(b).

(iii) **Notice of certified IDR entity selection.** Upon the selection of a certified IDR entity, in accordance with paragraph (c)(1)(i) of this section, the plan or issuer or the provider or emergency facility that submitted the notice of IDR initiation under paragraph (b)(2) of this section must notify the Secretary of the selection as soon as reasonably practicable, but no later than 1 business day after such selection, through the Federal IDR portal. In addition, if the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party must also provide information regarding the Federal IDR process's inapplicability through the Federal IDR portal by the same date that the notice of certified IDR entity selection must be submitted.

(A) **Content.** If the parties have agreed on the selection of a certified IDR entity or the party in receipt of the notice of IDR initiation has not objected

A4

to the other party's selection, the notice of the certified IDR entity selection must include the following information:

(1) Name of the certified IDR entity;

(2) The certified IDR entity number; and

(3) Attestation by both parties, or by the initiating party if the non-initiating party fails to object to the selection of the certified IDR entity, that the selected certified IDR entity meets the requirements of paragraph (c)(1)(ii) of this section.

(B) [Reserved]

(iv) **Failure to select a certified IDR entity.** If the plan or issuer and the provider, facility, or provider of air ambulance services fail to select a certified IDR entity in accordance with paragraph (c)(1)(i) of this section, the initiating party must notify the Secretary of the failure no later than 1 business day after the date of such failure (or in other words, 4 business days after initiation of the Federal IDR process) by electronically submitting the notice as described in paragraph (c)(1)(iii) of this section but indicating that the parties have failed to select a certified IDR entity. In addition, if the non-initiating party believes that the Federal IDR process is not applicable, the non-initiating party must also provide information regarding Federal IDR process's inapplicability through the Federal IDR portal by the same date that the notice of failure to select must be submitted. Upon notification of the failure of the parties to select a certified IDR entity, the Secretary will select a certified IDR entity that charges a fee within the allowed range of certified IDR entity fees through a random selection method not later than 6 business days after the date of initiation of the Federal IDR process and will notify the plan or issuer and the provider or facility of the selection. If there are insufficient certified IDR entities that charge a fee within the allowed range of certified IDR entity fees available to arbitrate the dispute, the Secretary, jointly with the Secretary of the Treasury and Secretary of Labor, will select a certified IDR entity that has received approval, as described in paragraph (e)(2)(vi)(B) of this section, to charge a fee outside of the allowed range of certified IDR entity fees.

(v) **Review by certified IDR entity.** After selection by the parties (including when the initiating party selects a certified IDR entity and the other party does not object), or by the Secretary under paragraph (c)(1)(iv) of this section, the certified IDR entity must review the selection and attest that it meets the requirements of paragraph (c)(1)(ii) of this section. If the certified IDR entity is unable to attest that it meets the requirements of paragraph (c)(1)(ii) of this section within 3 business days of selection, the parties, upon notification, must

A5

select another certified IDR entity under paragraph (c)(1) of this section, treating the date of notification of the failure to attest to the requirements of (c)(1)(ii) as the date of initiation of the Federal IDR process for purposes of the time periods in paragraphs (c)(1)(i) and (iv) of this section. Additionally, the certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies. If the Federal IDR process does not apply, the certified IDR entity must notify the Secretary and the parties within 3 business days of making that determination.